SEYFARTH SHAW LLP
Richard B. Lapp (SBN 271052)
rlapp@seyfarth.com
Christopher A. Crosman (SBN 190336)
ccrosman@seyfarth.com
2029 Century Park East, Suite 33500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

SEYFARTH SHAW LLP
Phillip J. Ebsworth (SBN 311026)
pebsworth@seyfarth.com
400 Capitol Mall, Suite 2350
Sacramento, California 95814-4428
Telephone: (916) 448-0159
Facsimile: (916) 558-4839

Attorneys for Defendant
Atria Management Company, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARYAM KHOSHCHIN, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ATRIA MANAGEMENT COMPANY, LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL OF DEFENDANT ATRIA MANAGEMENT COMPANY LLC**<br><br>Sacramento County Superior Court<br>Case No. 34-2022-00318414<br><br>Action Filed: April 18, 2022 |

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that Defendant Atria Management Company, LLC, hereby removes the above-captioned case from the Superior Court of the State of California, County of Sacramento, to the United States District Court for the Eastern District of California, asserting original jurisdiction under 28 U.S.C. section 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")), removal jurisdiction under 28 U.S.C. sections 1441(a), 1446, and 1453, and supplemental jurisdiction pursuant to 28 U.S.C. section 1367. Atria states that removal is proper for the following reasons:

**I.   BACKGROUND AND PROCEEDINGS IN STATE COURT**

1. On April 18, 2022, Plaintiff Maryan Khoshchin filed a class action Complaint in Sacramento County Superior Court in the State of California entitled *Maryam Khoshchin, as an individual and on behalf of all others similarly situated, Plaintiff vs. Atria Management Company, LLC, a Delaware Limited Liability Company; and Does 1 through 50, inclusive, Defendants.* The Complaint was assigned Sacramento County Superior Court Case No. 34-2022-00318414.

2. The Complaint purports to allege three claims for relief: (1) "Violation of Labor Code §§ 226.7 and 512;" (2) "Violation of Labor Code § 226;" and (3) "Violation of Business and Professions Code § 17200, *et seq.*"

3. On April 27, 2022, Plaintiff served the Complaint on Atria and at that time also served a Summons, Civil Case Cover Sheet, and Alternative Dispute Resolution Information Package. A true and correct copy of the Complaint, Summons, Civil Case Cover Sheet, and Alternative Dispute Resolution Information Package is attached hereto as **Exhibit A**.

4. The Complaint seeks to certify a class of "[a]ll current and former non-exempt employees of Defendant in the State of California who earned non-discretionary remuneration, including, but not limited to bonuses and incentives, and meal/rest period premium pay during the same workweek at any time between April 18, 2018, through the present." (Ex. A, Complaint at ¶ 17.)

5. On May 26, 2022, Atria answered Plaintiff's unverified Complaint in the Superior Court of California, County of Sacramento. A true and correct copy of Atria's Answer is attached hereto as **Exhibit B.**

6. Exhibits A and B constitute all pleadings, processes, and orders served on, or filed by, Atria in this action.

## II. TIMELINESS OF REMOVAL

7. Plaintiff served her Summons and Complaint on April 27, 2022. This Notice of Removal is timely because it is being filed within thirty (30) days of the service upon Atria of a copy of the Summons and Complaint, and within one (1) year of the commencement of this action. *See* 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining the time for filing a notice of removal does not run until a party has been formally served with the summons and complaint under applicable state law).

## III. JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

8. This Court has original subject-matter jurisdiction over this action under CAFA, codified in relevant part in 28 U.S.C. section 1332(d)(2). As set forth below, this action is properly removable pursuant to 28 U.S.C. section 1441(a) because the alleged amount in controversy exceeds $5,000,000, exclusive of interest and costs, and is a purported class action in which a class member is a citizen of a State different from that of Defendant (28 U.S.C. §§ 1332(d)(2) & (6)), and the number of putative class members is greater than 100. *See* 28 U.S.C. §§ 1332(d)(5)(B).

### A. There Is Minimal Diversity For Removal Under CAFA

9. CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction. That is, at least one purported class member must be a citizen of a state different from any named defendant. *See* 28 U.S.C. § 1332(d)(2)(A) ("any member of a class of plaintiffs is a citizen of a State different from any defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (explaining that to achieve its purposes CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement in 28 U.S.C. § 1332(d)(2)). Here, such minimal diversity exists among the parties as Plaintiff is citizen of a state that is different from Atria's state of citizenship.

### 1. Plaintiff Is Citizen of California

10. For diversity purposes, a person is a "citizen" of the state in which they are domiciled. *See Kantor v. Wellesly Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place where he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes.").

11. Here, Plaintiff alleges she worked for Atria "from about December 2021 to about April 12, 2022" in Sacramento County, California. (Ex. A, Complaint at ¶¶ 7–8.) Plaintiff provided Atria with a California address when she applied for employment with Atria in 2021. (Declaration of Phyllis Smith ("Smith Decl.") at ¶ 5). Throughout her entire employment with Atria, Plaintiff maintained a California address on file for purposes of her personnel file, payroll checks, and other uses. (*Id.*) Plaintiff's last known home address is in California. (*Id.* at ¶ 10) Accordingly, Plaintiff is, and has been at all times since the institution of this action, a citizen of the State of California.

### 2. Atria Is Not A Citizen of California

12. Limited liability companies are unincorporated associations for purposes of 28 U.S.C. section 1332. *Johnson v. Columbia Props. Anchorage*, LP, 437 F.3d 894, 899 (9th Cir. 2006) (holding that, "like a partnership, an LLC is a citizen of every state of which its owners/members are citizens").

13. For purposes of diversity jurisdiction under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see also Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032 fn.13 (9th Cir. 2009) (A. Kleinfeld, concurring) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes…").

14.     Thus, to determine jurisdiction under CAFA, limited liability companies, such as Atria, are treated the same as corporations in determining their citizenship.

15.     Pursuant to 28 U.S.C. section 1332(c)(1), "for purposes of this subsection and section 1453 [28 U.S.C. § 1453], [a] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

16.     Courts apply the "nerve center" test to determine a corporation's principal place of business for diversity purposes. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id.* Other relevant factors include where corporate executives maintain their offices, where corporate policies and procedures are made, and where primary corporate functions are based. *See Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporation's headquarters were located, where the corporate officers worked, and from where corporate policies and procedures were made).

17.     Atria is, and has been at all times since this action commenced, a limited liability company organized under the laws of the State of Delaware. (Smith Decl. at ¶ 3; *see also* Ex. A, Compl. ¶ 10) (acknowledging that Atria "is a Delaware limited liability company").

18.     Further, Atria' principal place of business is, and has been at all times since this action commenced, located in the State of Kentucky. (Smith Decl. at ¶ 3). Atria's corporate headquarters are located in Louisville, Kentucky, where its high level officers direct, control, and coordinate the company's activities. (Smith Decl. at ¶ 4). Additionally, many of Atria's administrative functions, including corporate finance, payroll, and accounting, are directed from the Louisville, Kentucky office. *Id.* Accordingly, Atria's principal place of business is Louisville, Kentucky under the "nerve center" test. *See Hertz Corp. supra*, 559 U.S. at 92-93.

19.     Therefore, for diversity of citizenship purposes, Atria is, and has been at all times since this action commenced, a citizen of the States of Delaware and Kentucky within the meaning of 28 U.S.C. section 1332(c)(1).

### 3. Doe Defendants' Citizenship Must Be Disregarded

20. The residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (doe defendants need not join in removal). Thus, Doe defendants 1 through 50 do not deprive this Court of jurisdiction.

21. Accordingly, because Plaintiff is a citizen of California and Atria is not a citizen of California, diversity of citizenship exists between Plaintiffs and Defendants for purposes of CAFA.

### B. The Number of Putative Class Members Exceeds 100

22. CAFA requires that the aggregated number of members of all classes proposed in a complaint be at least 100. 28 U.S.C. § 1332(d)(5)(B).

23. Plaintiff seeks relief on behalf of a putative class comprised of "[a]ll current and former non-exempt employees of Defendant in the State of California who earned non-discretionary remuneration, including, but not limited to bonuses and incentives, and meal/rest period premium pay during the same workweek at any time between April 18, 2018, through the present." (Ex. A, Complaint at ¶ 17.)

24. From April 18, 2018, through May 14, 2022 (the "putative class period"), there have been more than 3,900 employees who fall within the alleged class definition. (Smith Decl. at ¶ 7).

25. Accordingly, the aggregated number of members of the putative class proposed by Plaintiff far outnumbers the 100 member requirement.

### C. The Amount in Controversy Exceeds $5,000,000.00.

26. While Atria specifically denies liability as to Plaintiff's claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and costs. All calculations supporting the amount in controversy are based on the Complaint's allegations (along with other documents as identified herein), assuming, without any admission, the truth of the allegations and assuming liability (which Atria disputes) is established. Likewise, these calculations are based on the putative class alleged in the Complaint and in no way indicate that class treatment is appropriate in this

case, or that Plaintiff has standing to represent any such class, or that the class proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. Defendant expressly reserves the right to challenge Plaintiff's claims, adequacy and standing to represent any class, class definitions, and calculation of damages in all respects.

27. In calculating the amount in controversy under CAFA, the claims of the individual members of a class are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep, S. Rep. No. 109-14, at 42 (2005). Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case… . Overall, § 1332(d) was intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.")

28. To establish that the amount in controversy exceeds the jurisdictional amount, the defendant need only make a plausible claim that the amount in controversy exceeds that amount. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014).

29. Where, as here, Plaintiff does not plead a specific amount of damages, a defendant need only make a *prima facie* showing that it is "more likely than not" that the amount in controversy meets the jurisdictional minimum. *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 404 (9th Cir. 1996) (stating that "[i]n cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence," that the amount meets the jurisdictional requirement).

30. Courts may assume a 100% violation rate in calculating the amount in controversy for removal purposes when a more precise calculation is not apparent on the face of the complaint. *See e.g. Altamirano v. Shaw Indus.*, No. C–13–0939 EMC, 2013 WL 2950600, *11-12 (N.D. Cal. June 14, 2013) ("Plaintiff's allegations about the pervasiveness of the policies" justified 100% violation rates.); *Coleman v. Estes Express Lines, Inc.*, 2010 U.S. Dist. LEXIS 79772 at *18-19 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate."); *Muniz v. Pilot Travel Centers LLC.*, Case No. S-07-0325, 2007 WL 1302504, * at 4 (E.D. Cal. May 1, 2007) ("Plaintiff is the 'master of [his] claim[s],' and if [he] wanted to avoid removal, [he] could have alleged facts specific to [his] claims which would narrow the scope of the putative class or the damages sought" to indicate a violation rate smaller than 100%.).

31. Here, Plaintiff seeks to assert three class claims under various provisions of the California Labor Code and the Unfair Competition Law and seeks general damages, penalties, restitution, lost wages, attorneys' fees, and costs on behalf of herself and the putative class. Based on a review of employment records, and even making the most conservative calculations, the amount in controversy on Plaintiff's putative class claims far exceeds the $5,000,000.00 jurisdictional amount.

**1.    Waiting Time Penalties - Labor Code § 203 (First Cause of Action)**

32. Plaintiff alleges that Defendant failed to timely pay Plaintiff and putative class members all meal and rest premium wages due upon separation of employment. (Ex. A, Compl. ¶¶ 30–33.) Labor Code § 203(a) states that the wages of an employee who quits "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

33. The statute of limitations for recovery of waiting time penalties under Labor Code § 203 is three years. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010) (holding that a three year statute of limitations applied to § 203 claims).

34. From April 18, 2018, through May 14, 2022, there were approximately 3,909 putative class members whose employment with Atria ended. (Smith Decl. at ¶ 7). The average hourly rate for these putative class members, was approximately $15.81 per hour. (Smith Decl. at ¶ 8). Assuming that

the 3,909 former employees are owed the maximum penalty of 8 hours of pay per day for 30 days, the alleged amount in controversy for just the claim for waiting time penalties would be $14,832,309.60 [$15.31 per hour x 8 hours per day x 30 days x 3,909 former putative class members].

### 2. Labor Code § 226 (Second Cause of Action)

35. Plaintiff alleges that in violation of Labor Code section 226(a), Atria failed to accurately report the gross wages earned, the net wages earned, and the correct hourly rates of pay for Plaintiff and the putative class members. (Ex. A, Compl. ¶¶ 34–37.) Labor Code § 226(e) provides an employee a minimum of $50.00 for the initial pay period in which a violation occurs, and $100.00 for each further pay period in which a violation occurs, up to a maximum penalty of $4,000.00 per employee. The statute of limitations for penalties under Labor Code section 226 is one year. Cal. Civ. Proc. Code § 340(a).

36. The total number of pay periods for non-exempt employees in California from April 18, 2021, to May 14, 2022, during which the employee was paid both "meal and [or] rest premium wages" along with other "non-discretionary remuneration," is 16,956. Allocating a $50 penalty to the first such pay period per employee, and $100 to all subsequent pay periods, and imposing a cap of $4,000 in wage statement penalties per employee, the amount in controversy on Plaintiff's inaccurate wage statement claim is $1,535,600.00

### 3. Attorneys' Fees

37. Plaintiff additionally seeks attorneys' fees. (Ex. A, Complaint at Prayer for Relief.) *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

38. A reasonable estimate of fees likely recoverable may be used in calculating the amount in controversy. *See Longmire v. HMS Host USA, Inc.*, No. 12-cv-2203 AJB (DHB), 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (citing

*Brady*, 243 F. Supp. 2d at 1010-11); *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *2 (E.D. Cal. May 1, 2007) (attorneys' fees appropriately included in determining amount in controversy).

39. In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation; courts may depart from this benchmark when warranted. *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *28 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable).

### 4. Summary of Amount in Controversy Broken Down By Claim

40. As set forth above and below, Plaintiff's claims for waiting time penalties, inaccurate wage statements, and attorneys' fees cause the amount in controversy to exceed $5,000,000.00 (even *without* assigning any value to her claim for unpaid wages):

| Claim | Amount In Controversy |
| --- | --- |
| 1. Labor Code § 203 Claim | **$14,832,309.60** |
| 2. Labor Code § 226 Claim | **$1,535,600.00** |
| 3. Attorneys' Fees | **$4,091,977.40** |
| **Sub-Total** | **$20,459,887.00** |

41. Because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2). This action is proper for removal to this Court pursuant to 28 U.S.C. § 1441(a).

## IV. VENUE

42. Venue lies in the United States District Court, Eastern District of California, pursuant to 28 U.S.C. §§ 84(c)(2), 1441 and 1446(a). This action was filed originally in the Superior Court of the State of California, County of Sacramento. The County of Sacramento is within the jurisdiction of the United States District Court, Eastern District of California.

## V. NOTICE OF REMOVAL

43. A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of Sacramento, pursuant to 28 U.S.C. § 1446(d).

## VI. PRAYER FOR REMOVAL

44. WHEREFORE, Atria prays that this civil action be removed from the Superior Court of the State of California, County of Sacramento, to the United States District Court for the Eastern District of California.

DATED: May 27, 2022                         SEYFARTH SHAW LLP


                                            By: */S/ Christopher A. Crosman*
                                                Christopher A. Crosman
                                                Phillip J. Ebsworth

                                            Attorneys for Defendant
                                            Atria Management Company, LLC

NOTICE OF REMOVAL OF DEFENDANT ATRIA MANAGEMENT COMPANY LLC

83944725v.1